LAW OFFICE OF
**Peter A. Romero**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

May 25, 2023

**VIA ECF**
Hon. James W. Wicks
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

   Re: *Bernardo DeJesus Fuentes v. Palermo Flooring, Inc., et al.*
      Docket No. 2:22-CV-03531-ENV-JMW

Dear Judge Wicks:

  This firm represents the Plaintiff, Bernardo DeJesus Fuentes, in the above-referenced matter brought against Defendants Palermo Flooring, Inc. and Matthew Bruno, for alleged violations of the Fair Labor Standards Act and New York Labor Law. Specifically, Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as failure to issue accurate wage statements pursuant to NYLL § 195(3), and failure to provide a wage notice at his time of hire pursuant to NYLL § 195(1). D.E. 1. Through early mediation, the parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement. The parties' proposed Executed Settlement Agreement (the "Agreement") is attached as Exhibit A.

## Procedural History

  On June 15, 2022, Plaintiff filed his Complaint in this action. D.E. 1. Defendants filed their Answer to the Complaint on August 22, 2022. D.E. 8. Subsequent to the Initial Conference, the parties exchanged phase I discovery and conducted settlement discussions. The parties then requested to be referred to mediation, which was granted on December 19, 2022. The parties then held an EDNY mediation with mediator Giulio Zanolla on February 14, 2023, which resulted in a settlement. Thereafter, the parties drafted their formal settlement agreement, which has been fully executed, and is attached hereto as Exhibit A.

  The settlement agreement between the Plaintiffs and the Defendants provides for payment of a gross sum of $45,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total sum of $29,115.34, and Plaintiffs' counsel will receive a total sum of $15,884.66, consisting of $14,557.66 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,327.00 for litigation costs.

LAW OFFICE OF PETER A. ROMERO PLLC · LABOR AND EMPLOYMENT LITIGATION
490 Wheeler Road, Suite 250, Hauppauge, New York 11788 · (631) 257-5588 · overtimelawny.com

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its owner and operator – operate a flooring and home remodeling company in Oakdale, New York. Plaintiff asserts Defendants employed him as a laborer from in or around 2014 through March 18, 2022. Throughout his employment, Plaintiff alleges that he commonly worked more than forty hours during most workweeks. For this work, Plaintiff alleges that Defendants paid him his regular hourly rate for every hour worked, including those worked in excess of forty each week. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiff contends that Defendants failed to pay him his statutorily mandated overtime rate of pay of one and one-half times his applicable regular rate of pay for the hours he worked in excess of forty hours each workweek in violation of the FLSA and NYLL, and failed to provide him with an accurate wage notice at the time of hire, or accurate wage statements on each and every pay day as his overtime hours were not paid at or detailed at the correct rate on the stubs.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiff was paid correctly for his hours worked. Defendants strenuously argue that Plaintiff was paid properly, and provided partial employment records that purported to show the hours worked by Plaintiff and his hourly rate. Plaintiff vigorously rejects the veracity of these records, and maintains that he was not paid properly for his overtime hours worked. Defendants also contest the number of hours worked by Plaintiff during his workweeks, asserting that Plaintiff worked fewer hours during his workweeks than alleged. Each of these disputes will turn primarily on the credibility of the portion of the records that exist, and the parties, and the resolution of these disputes would have a significant outcome on liability and Plaintiff's damages at trial. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Additionally, Defendants assert that they have limited financial resources and cannot afford a larger settlement or judgment. Because of this, Plaintiff faces a significant risk that he could end up collecting little or even no monetary recovery, even if successful at trial.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recovery under the FLSA at trial amounts to $16,757.34 for unpaid FLSA wages and $16,757.34 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties and determining whether Plaintiff's recollection of his hours worked will prevail or whether Defendants' records are accurate and must be followed. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiff were successful on his FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce his unpaid FLSA damages to $11,038.68. Moreover, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive little or nothing at all under the FLSA. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Additionally, even if Plaintiff were successful at trial, there is a substantial risk that Plaintiff would be able to collect only a small portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Agreement is limited to wage-related claims. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse

or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action.

Additionally, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). While the Agreement does include a mutual non-disparagement provision, the mutual non-disparagement provision provides Plaintiff and Defendants with the ability to provide truthful statements about their experience litigating this action, about Plaintiffs' FLSA claims in this action, and about the resolution of this action. Thus, the parties' agreed to mutual non-disparagement provision contains the required carve out provision permitting parties to make truthful statements about this lawsuit and their experiences litigating this matter. Ramos Pelico v. PGNV, LLC, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements. The Agreement provides that the mutual non-disparagement clause 'shall not apply to truthful statements made by any of the Parties regarding their experiences in the Litigation and/or the underlying facts of any claim or defense.'"); Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc., 2019 WL 2526087, at *7 (E.D.N.Y. June 19, 2019) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (non-disparagement clause "'must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'"); Payano v. 1652 Popham Assocs., LLC, 2019 WL 464231, at *4 (S.D.N.Y. Feb. 6, 2019) (collecting cases) (approving non-disparagement clause "that contains a carve out for truthful statements concerning the plaintiff's experience litigating the action." and noting "the overwhelming weight of authority has approved such provisions"); Elamrani v. Henry Limousine, Ltd., 2018 WL 3518505, at *3 (E.D.N.Y. July 19, 2018) (holding that "while the agreement does contain a mutual non-disparagement clause, it also contains carve-out language permitting plaintiffs to make truthful statements about plaintiffs' experience in litigating their claims. The Court finds that the agreement's language adequately protects plaintiffs' interests in accordance with the goals of the FLSA, and approves the agreement accordingly.").

Finally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator at a formal mediation session. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

### The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $14,557.66, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)).  In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate.  See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 250, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal courts.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003.  He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004.  Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015.  Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle.  That firm employs Matthew J. Farnworth, Esq., Associate, David D. Barnhorn, Esq., Senior Associate, a paralegal, and an administrative assistant, as well as other support staff as needed.  Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts.  Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts.  Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters.  Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters.  Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees.  Mr. Romero has also been selected as a Super Lawyer in "Employment Litigation" for the years 2019, 2020 and 2021.

The undersigned, Matthew J. Farnworth, Esq., graduated from Pace University School of Law in 2016. I was admitted to practice in New York State, as well as the New York Eastern and Southern District Courts in 2018, in New Jersey State Court in 2019, and the Federal District of New Jersey in 2020. I have been employed as an associate for this Firm since August 2021.  Prior to joining this firm, I worked as a senior associate and associate at two prominent employment law litigation firms from May 2018 until August 2021. Throughout my legal career, beginning in May 2018 through the present, I have focused my

practice almost exclusively on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies, as well as handling active litigation in both state and federal courts.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $250.00 per hour for the undersigned, Matthew J. Farnworth, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba.[1] "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $250.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Alcantara v. Alon B. Inc., No. 18-CV-5516 (JMA) (AYS), 2021 WL 4463539, at *1 (E.D.N.Y. Sept. 29, 2021) (approving "rates of $400.00 per hour for attorney Peter Romero, Esq. and $100 per hour for paralegal Angelica Villalba" as reasonable "and within the range of similarly experienced attorneys who practice wage and hour cases in the Eastern District of New York."); Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275.00 and noting proper rate for senior associates is up to $325.00 per hour and for experienced partners is between $300.00-$450.00 per hour in this district); Allied 100, LLC v. Chadha, 2021 WL 7184241, at *11 (E.D.N.Y. Jul. 26, 2021) (finding a rate of $325.00 reasonable for an associate who graduated law school in 2018); Cap. One, N.A. v. Auto Gallery Motors, LLC, 2020 WL 423422, at *4 (E.D.N.Y. Jan. 27, 2020) (finding a rate of $275.00 per hour reasonable for associates with more than five years of experience, and a rate of $250.00 per hour reasonable for an associate with less than five years of experience); National Environmental Safety Company, Inc. v. Katz, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (finding a rate of $300.00 reasonable for an associate who failed to provide any evidence of his competence beyond his title); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. CEI Contractors Inc., 2022 WL 3225680, at * 5 (S.D.N.Y. August 10, 2022) (awarding an associate who graduated from law school the same year as the undersigned associate, practicing within the associate's particular legal field fees of $250.00 per hour); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. Land Cruising Properties, Inc., 2022 WL 1125623 at *7 (S.D.N.Y. April 15, 2022) (same); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Innovation Designs Inc., 2021

---

[1] While this firm, and Mr. Farnworth's previous firm primarily represent clients on a contingency fee basis, Mr. Farnworth and Mr. Romero have represented some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Farnworth for representation at the rate of $250.00 to $300.00 per hour and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, and Defendants' compensation policies, engaged in relevant pre-mediation discovery, created an assessment of Plaintiff's damages, engaged in mediation with Plaintiff and Defendants, and subsequently negotiated a settlement agreement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

As a result, the Firm expended a total of 57.5 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $10,190.00. Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430 (S.D.N.Y. Dec. 14, 2018) (See DE 74) (Memorandum and Order approving a lodestar multiplier of 6.7). Plaintiff's counsel's representation in this matter is subject to a contingency retainer, creating an inherent risk that this firm could receive no compensation for its efforts in this action if the lawsuit were not successful or if Plaintiff were unable to collect a judgment. Given the Defendants' limited financial circumstances, the risk of non-payment for this settlement is serious and exceeds the risks associated with a typical settlement. Moreover, Plaintiff's counsel provided quality representation by zealously pursuing Plaintiff's litigation objectives and obtaining a favorable settlement. Here, the multiplier requested is approximately 1.42, which is well within the range granted by courts in this circuit.

   While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See <u>Zeltser</u>, 2014 WL 4816134, at *10 (citing <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); <u>Beckman</u>, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); <u>see also</u> <u>Fisher v. SD Prot. Inc.</u>, 948 F.3d 593, 603 (2d Cir. 2020) (quoting <u>Sand v. Greenberg</u>, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); <u>Zeltser</u>, 2014 WL 4816134, at *8 (quoting <u>Sand</u>, 2010 WL 69359, at *3; and citing <u>Reyes v. Altamarea Grp., LLC</u>, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

   Lastly, Plaintiffs' counsel seeks reimbursement for $1,327.00 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint and $925.00 for the mediation costs. Proof of payment of same is annexed hereto as Exhibit C, and on the Docket at D.E. 1.

   Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $14,557.66 and expenses in the amount of $1,327.00 should be approved as reasonable.

   In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. We thank the Court for its consideration of these requests.

              Respectfully submitted,

              __**/s/ Matthew J. Farnworth, Esq.**__
              MATTHEW J. FARNWORTH, ESQ.

C:  All Counsel of Record *via* ECF